WRANSLOW HOLTON *v.* MORGAN WHITNEY.

*Husband and wife, occupation of land by, &c.*

The possession of a piece of land, belonging to feme covert, upon which she and her husband reside, is a possession of the husband alone; and his acts and declarations are admissible for the purpose of showing the character and extent of the possession; —— in this case, to show that a piece of land which was fenced and occupied with that of his wife, did not belong to her, but to an adjoining proprietor.

EJECTMENT to recover the seizin and possession of a small tract of land, about an acre, situate in Putney. Plea, the general issue; trial by jury, September Term, 1855,—UNDERWOOD, J., presiding.

The plaintiff did not rely on any paper title to the premises in question, which, for the purposes of this trial, it was conceded, was in the defendant; but claimed to hold the land by the adverse possession of himself and of Mercy Adams, through whom he derived title to the adjoining land, by virtue of a deed from her administrator. The defendant claimed the land by virtue of a deed from Theophilus and David Crawford, dated April 19, 1849. In the spring of 1828, and for some years before, the said Mercy Adams and her husband Daniel Adams, lived on and occupied the lot conveyed to the plaintiff. In the spring of 1828, a fence was made between the Crawfords and Mercy Adams,—the south end being made by the Crawfords, and the north end by the said Daniel Adams. The fence was made straight,—the south end a board fence, and the north end a pole fence, which run through woods,

Crawfords' land being west of the line, and Adams' land the east side, and leaving the land in dispute on the east side of said pole fence. Daniel Adams died in March, 1838; Mercy continued to live on the premises till 1847, and died in 1849. Her administrator conveyed to the plaintiff in 1850. It appeared that in November, 1852, the defendant moved a portion of said pole fence east, so as to include the land in dispute with his other land, and was in possession of the same when this suit was commenced.

The plaintiff's testimony tended to show that after said pole fence was built in 1828, the same was repaired by the hired men who worked on the Mercy Adams land, and by the tenants, and that the poles for the repairs of said fence were cut on the disputed land; that they culled out the dead trees on the same for firewood, and that her cattle ran there, as there was no fence between this and Mrs. Adams' adjoining land. The plaintiff's evidence tended to show like possession after Mrs. Adams left the premises, in 1847, to the time of her decease, by hired men and tenants, and, after her decease, by her administrator. The defendant's evidence tended to show that Daniel Adams, while living, managed the farm, hired help, bought and sold the stock, &c., and the defendant proposed to prove by one witness (who testified that he was hired by said Daniel to work on the place, after the pole fence was made,) that the said Daniel Adams told him he must not cut wood on the knoll, (the disputed land,) for he did not own it; that it belonged to the Crawfords. To this the plaintiff objected, and the court excluded the evidence.

The court charged the jury, among other things not excepted to, that Mrs. Adams being a feme covert made no difference in her ability to gain title to the land in controversy by possession; and that if the jury found that the plaintiff, and those under whom he claimed, occupied and carried on the premises by cutting poles, wood, and by depasturing it for a term of fifteen years, uninterruptedly, before the defendant removed the fence, claiming ownership thereof, adverse to all persons, the plaintiff was entitled to recover; and that it made no difference that during part of the fifteen years, Mrs. Adams was a feme covert; that the actual possession during this time could not be qualified by the concessions of her husband,

30

so as to prevent the running of the statute of limitations against the grantors of the defendant.

Exceptions by the defendant.

W. C. Bradley and E. Kirkland for the defendant.

Mercy Adams could not of herself gain any separate possession of lands, occupied by her husband during coverture, the right of possession being in her husband. 17 Vt. 631, Shaw v. Partridge. 9 Vt. 335, Mattocks v. Stearns et ux. 26 Vt. 746, Bruce et ux v. Thompson. Reeve's Dom. Rel. 27. 2 Kent's Com.

And an adverse possession could not be gained against her during the coverture, she being protected by the statute. Slade's Rev. Stat. 291. Williams' Comp. Stat. 380, § 18. So of a reversioner; Jackson v. Schoonmaker, 4 Johns. 390; Same v. Selick, 8 Johns. 202.

But, on the other hand, her husband may dispose of her rights of possession, and assign her chattels real if he pleases, were those extending beyond his own life. Reeve's Dom. Rel. 23. If he makes no disposal, they revert to her at his death, but subject to such diminution as she may have made thereof. Reeve's Dom. Rel. 23, 24.

It follows that if they both dwelt on the premises, during coverture, the possession was subject to his control, and whether the possession of the land in dispute was adverse or not, depended on his intention to claim, mere possession alone not being sufficient. Angel on Lim. 476, 477 and note.

And certainly any declaration of the husband's, which went to show his intention, was proper evidence to the jury. Beecher v. Parmele, 9 Vt. 352. Haman v. Pettett, 5 Barn. & Ald. 223. Stansbury v. Ackwright, 5 Carr. & Payne 575. W. Cambridge v. Lexington, 2 Pick. 536. Church v. Burghast, 8 Pick, 327, 8. Crowell v. Bebee, 10 Vt. 33.

And the declaration once made, the possession would be qualified by it, 1 Cowen's notes on Phil. Ev. 597. Angel on Limitations 464 and note.

Keyes & Howe for the plaintiff.

The testimony offered to prove the admissions of the husband, as to the ownership of the land, was rightly excluded.

The admissions of a tenant or *quasi* tenant, cannot be used to prejudice the rights of the landlord. *Papendict* v. *Bridgewater*, Law. Rep. Oct. 1855. *Regina* v. *Bliss*, 7 Adol. & El. 157. *Daniel* v. *North*, 11 East 372. *Wood* v. *Veal*, 5 Barn &. Ald. 155.

The testimony offered to prove the admissions of Daniel Adams was wholly immaterial, it being offered to prove a fact already admitted in the case, to wit, Crawford's former ownership, and could not vary the result. *Hanchett* v. *Whitney*, 1 Vt. 316. *Morse* v. *Crawford*, 17 Vt. 499.

The charge respecting the concession of the husband was not founded on any testimony in the case, and whether right or wrong could not mislead the jury.

The opinion of the court was delivered by

REDFIELD, CH. J. In the present case the plaintiff claimed title to the premises by fifteen years adverse possession. To make out the term, it became necessary to include a portion of the time while the land was claimed to be in the possession of a married woman and her husband, both residing on the adjoining land, the fee of which was in the wife. The judge ruled that he might have the benefit of this possession of the wife, (as he regarded it,) and that " her being a feme covert made no difference in her ability to gain title to the land in question, by possession, and that the actual possession could not be qualified by concessions of the husband, so as to prevent the running of the statute of limitations." And testimony offered, tending to show that after the land in dispute was enclosed, the husband declared that he made no claim of title, but that the land belonged to the Crawfords, was rejected by the court.

The rejection of the testimony, and the charge of the court, seem to us altogether consistent, and equally a misapprehension of the law applicable to the subject. The case presented in the exceptions does not seem to be one where the wife is losing part of her freehold by the adverse possession of an intruder, and the acquiescence of the husband. If so there might have been more color in equity and justice for the rule laid down by the court. But here the plaintiff attempts to make title to land, confessedly not hers, unless obtained by means of an adverse possession, some

portion of which was while she was under coverture and lived with her husband.

Now, no rule of law is better settled than that such a possession is exclusively that of the husband. A married woman, living with her husband, is not capable of committing a disseisin, as the cases cited in argument abundantly show. Nor can she be said to have either an independent or a joint possession with the husband, The possession is that of the husband alone. She is no more capable of having such possession, than she is of contracting or sueing upon a contract made under coverture, or as much, indeed, for she may sometimes be joined with her husband in such case as plaintiff, it is said, when she is the meritorious cause of action, and the promise is made expressly to her. But while she resides with her husband, she could never be said to have any possession of lands or tenements, which were occupied and carried on by the husband. The possession, then, being exclusively that of the husband, his declarations were competent to show its character. And although remote, they were after the fencing of the land into the same field with the other lands occupied by him, and if the jury were satisfied this was originally done by consent of the Crawfords, or in subordination to their title, the possession could avail nothing for the purpose of creating title in Adams, or those who occupied after him, until something was said or done to advertise the owners that those in possession claimed title against them, as has often been held in this state. Judgment reversed and case remanded.